☒ FILED   ☐ LODGED

**MAR 31 2021**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

Richard Johnson 151089
Name and Prisoner/Booking Number

ASPC Eyman / Browning Unit
Place of Confinement

P.O. Box 3400
Mailing Address

Florence, Arizona 85132
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Richard Johnson
(Full Name of Plaintiff)

Plaintiff,

v.

(1) David Shinn
(Full Name of Defendant)

(2) "and others"

(3) _____

(4) _____

Defendant(s).

☐ Check if there are additional Defendants and attach page 1 A listing them.

CASE NO. CV-21-559-PHX-MTL (ESW)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

JURY TRIAL DEMANDED

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ☒ Other: 25 U.S.C. § 2903(1) and (3)(A); 28 U.S.C. § 1331 and § 1343(a)(3);

2. Institution/city where violation occurred: ASPC Eyman / Browning Unit; Florence, Az.

# In the United States District Court for the District of Arizona

Richard Johnson,
  Plaintiff,

v.

David Shinn,
Charles Ryan,
Thomas Higginson,
Shannon Thielman,
Chris O'Connor,
Patrick O'Brien,
Hope Ping,
Luis Matos,
Levi Brass,

CIVIL RIGHTS COMPLAINT BY A PRISONER

## A. Jurisdiction

1. This Court has jurisdiction over this action pursuant to: 42 U.S.C. § 1983, § 1988, and § 1996.

## B. DEFENDANTS

1. Name of first Defendant: **David Shinn**. The first Defendant is employed as: **the Director of the Arizona Dept. of Corrections** at **Central Office, Phoenix, Az.**
   (Position and Title) (Institution)

2. Name of second Defendant: **Charles Ryan**. The second Defendant is employed as: **the former Director of ADC** at **n/a - no longer employed**
   (Position and Title) (Institution)

3. Name of third Defendant: **Thomas Higginson**. The third Defendant is employed as: **Deputy Warden** at **Unknown**
   (Position and Title) (Institution)

4. Name of fourth Defendant: **Shannon Thielman**. The fourth Defendant is employed as: **Deputy Warden** at **Unknown**
   (Position and Title) (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner? ☒ Yes ☐ No

2. If yes, how many lawsuits have you filed? **4**. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: **Richard Johnson** v. **A.D.O.C., et al.**
      2. Court and case number: **Maricopa County Superior Court, cv 2007-007248**
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) **Case dismissed, not following proper procedures**

   b. Second prior lawsuit:
      1. Parties: **Richard Johnson** v. **Sergeant Juvera, et al.**
      2. Court and case number: **U.S. District Court, cv 12-0539-PHX-GMS (DKD)**
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) **Case dismissed, negligence was not deliberate indifference**

   c. Third prior lawsuit:
      1. Parties: **Richard Johnson** v. **Carson McWilliams, et al.**
      2. Court and case number: **U.S. District Court, cv 15-0670-PHX-GMS (DKD)**
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) **Count 1 - cash settlement; count 2 - Settlement Agreement and Release of Claims contract**

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

2

## B. DEFENDANTS

5. Name of fifth Defendant: Chris O'Connor. The fifth Defendant is employed as: a ~~Mg~~ Major of the Arizona Dept. of Corrections at "Unknown" Institution.

6. Name of Sixth Defendant: Patrick O'Brien. The sixth Defendant is employed as: Deputy Warden at "Unknown" Institution.

7. Name of seventh Defendant: Hope Ping. The seventh Defendant is employed as: Deputy Warden at "Unknown" Institution.

8. Name of eighth Defendant: Luis Matos. The eighth Defendant is employed as: a Major of the Arizona Dept. of Corrections at "Unknown" Institution.

9. Name of ninth Defendant: Levi Brass. The ninth Defendant is employed as: Special Security Unit officer at ASPC Eyman / Browning Unit.

## C. PREVIOUS LAWSUITS

d. Fourth prior lawsuit:
   1. Parties: Richard Johnson v. Charles L. Ryan, et al.
   2. Court and case number: U.S. District Court, cv 18-03055-PHX-MTL(ESW)
   3. Result: case dismissed from District Court, pending in U.S. Court of Appeals for the Ninth Circuit - no: 20-15293.

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: **First Amendment**

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☒ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   **Facts**

   ① Prior to May 1, 2014 Plaintiff Richard Johnson (Plaintiff) was housed at Arizona State Prison Complex (ASPC) Eyman/Browning Unit (Browning Unit).

   ② While at Browning Unit, Plaintiff submitted several grievances concerning the unsanitary and inhumane cell conditions and officers' sexual harrassment of Plaintiff while at Browning Unit.

   ③ On or about May 1, 2014 Plaintiff was transferred from Browning Unit to ASPC Florence Central Unit (Central Unit), cell block (C.B.) 7.

   ④ On or about May 7, 2014 Plaintiff was moved from C.B.7 to C.B.2, a maximum security general population cell block which had a behavior based incentive program.

   ⑤ While at C.B.2 Plaintiff continued to follow up and to pursue his previously submitted grievances.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   The injuries Plaintiff has endured and will continue to endure is stated in paragraphs 32 through 37.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count I? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count I to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

## D. Cause of Action

⑥ In response to his requests and follow-up efforts Plaintiff was told by Correctional Officer (C.O.) III Brown to "let your grievances go" and "let the past be the past".

⑦ Plaintiff nonetheless continued to pursue his grievances. Specifically, Plaintiff sent several inmate letter forms addressed to the then presiding C.O. IV at Browning Unit inquiring into the status of his pending, unanswered, and otherwise outstanding grievances.

⑧ Days later, on June 5, 2014 Plaintiff was involuntarily transferred to the more restrictive ASPC Florence/Kasson Unit (Kasson Unit), a maximum security detention unit.

⑨ When asked why he was transferred to Kasson Unit, Division Director Carson McWilliams (McWilliams) informed Plaintiff on 3 separate occasions — 07/30/2014, 08/29/2014, and 09/05/2014 — that Plaintiff was transferred "pending validation" as a Security Threat Group (STG) member.

⑩ As of June 5, 2014, however, Special Security Unit (SSU) officers had not even initiated Plaintiff's STG Validation Packet, nor had they collected the necessary STG-specific evidence to classify Plaintiff as an STG suspect.

⑪ According to Department Order 806 Security Threat Groups (D.O. 806) in effect at the time, before Plaintiff could be considered as "Suspected Status" pending Validation, Plaintiff had to accrue

3-a

the "documented assignment" of a minimum of 2 points in at least one criteria on the Security Threat Group (STG) Worksheet":
SUSPECTED STATUS - An inmate suspected of being an STG member and is being monitored pending validation of the 14 criteria contained in the Security Threat Group (STG) Worksheet. The documented assignment of a minimum of two points in at least one criteria on the Security Threat Group (STG) Worksheet is necessary. (D.O. 806, pg. 22, under VALIDATION section; STG Worksheet, form 806-3, Validation Criteria section).

⑫ As of June 5, 2014 Plaintiff had not been assessed the "documented assignment" of the 2 points "necessary" to consider him as "Suspected Status". Nor does Plaintiff's Validation Packet contain the "documented assignment" of any points that pre-date June 5, 2014 that under D.O. 806, were a necessary condition to placing Plaintiff on "Suspected Status".

⑬ As demonstrated by the absence of any "documented assignment" of the necessary 2 points in his Validation Packet pre-dating June 5, 2014, McWilliams' stated (and continuously repeated) reason for transferring Plaintiff to Kasson Unit - that Plaintiff was as of June 5, 2014 "pending validation" - was mere pretext.

⑭ The transfer was done with the approval and participation of Defendants Ryan and Brass and represented the first in a series of a pattern of retaliatory acts against Plaintiff for his exercise of basic rights, including his protected First Amendment Right to grieve the unhealthy and inhumane cell conditions and the sexual harrassment he

3-B

endured by officers while at Browning Unit.

⑮ In October 2014 with the approval or involvement of Defendants Ryan and Brass Plaintiff was subjected to a hearing on charges of being a member of an STG.

⑯ Plaintiff was erroneously found to be a member of the Warrior Society, a listed STG. The hearing and review committees did not base their decisions on sufficient or reliable evidence of STG membership.

⑰ The documents used to validate Plaintiff were in fact and remain insufficient and unreliable.

⑱ Following his hearing and exhausting all available remedies Plaintiff submitted a 42 U.S.C. § 1983 civil complaint against a number of prison officials. Johnson v. McWilliams, cv15-00670-GMS; 9th Cir. Case No. 17-17524.

⑲ On or about January 23, 2020 Plaintiff and the remaining Defendants agreed to a Settlement Agreement and Release of Claims (Settlement) that stipulated a number of conditions, to include but not limited to, "a new Validation Hearing" in which Plaintiff would be permitted to use discovery materials on his behalf. The discovery materials would "be limited to addressing the evidence contained in Mr. Johnson's STG Validation packet". (Settlement at 2(D))

⑳ Plaintiff's "new Validation Hearing" would utilize "the same STG Validation Packet that was utilized during Plaintiff's original

3-C

Validation Hearing that was conducted on October 22, 2014." (Settlement at 2(A))

21) Another condition, Plaintiff would not release "claims or causes of action that have yet to accrue or that may arise in the future out of separate factual events and circumstances against the State of Arizona and/or any of its Departments or Agencies and/or their agents or employees, including claims or causes of action that may arise out of the new Validation Hearing that will be conducted." (Settlement at 4)

22) In March 2020 and September 2020, with the approval or involvement of Defendants Shinn, Higginson, Thielman, O'Connor, O'Brien, Ping, Matos, and Brass, Plaintiff was given a new hearing on charges of being a member of an STG.

23) With the approval or involvement of Defendants Shinn, O'Brien, Ping, Matos, and Brass, the March 2020 hearing was so prejudicial towards Plaintiff and his Native American ethnicity that it lacked a minumum of due process and ethical conduct.

24) The Arizona State Attorney Generals Office offered another Validation Hearing to Plaintiff before he excercised the conditions of his Settlement.

25) Out of good faith and avoiding additional litigation that would require more time and expanses, Plaintiff agreed.

3-D

26) With the approval or involvement of Defendants Shinn, Higginson, Thielman, and O'Connor, the September 2020 hearing was more of the same flagrant bias against Plaintiff. Defendants did not base their decisions on sufficient or reliable evidence of STG membership. The documents used to validate Plaintiff were in fact and remain insufficient and unreliable.

27) For instance:

(1) a list alleged to have been made by Plaintiff that was used as a piece of evidence to validate him, through discovery indicated the list was not in Plaintiff's handwriting or did not have Plaintiff's name or ADC number, in it. Plaintiff unequivocally denies knowing about or possessing the list.

(2) in addition to the list, other pieces of documents used to validate Plaintiff were purportedly discovered in Plaintiff's property and used as proof of STG activity by simple possession, yet during discovery, responses by prison officials admitted that their records indicated that was not true. Prison officials never admitted where the origins of these documents stemmed from. Plaintiff unequivocally denies knowing about or possessing these documents.

(3) Defendants used Plaintiff's Native American language, that he speaks, as evidence of STG activity despite the Arizona State Constitution - Article 28 § 1(2)(g) reaffirming "Using or preserving Native American languages" and 42 USCS § 1996 which the United States of America promised "American Indians their inherent right of freedom to believe, express, and exercise" their "traditional" belief/religion, to include speaking his Native language without fear of reprisal from the Government as is stated in the United States Constitution, First Amendment.

3-E

(4) Defendants O'Brien, Ping, and Matos determined that a piece of document was valid STG material by the <u>unbelievable</u> position that the power point presentation packet Plaintiff prepared and provided to Defendants; the section rebutting that document, the beginning of that section Plaintiff paraphrased what his statement of charges said then followed that statement with half a dozen reasons why that document was not valid, credible, and reliable - supported with discovery responses and materials from prison officials - and still Defendants said the only reason why the charge was valid was due to Plaintiff's "self-admission". That "self-admission" was Plaintiff paraphrasing his statement of charges. To Defendants, that was "documentary" proof Plaintiff admitted to the document.

(5) Defendants Higginson, Thielman, and O'Connor sustained Defendants O'Brien, Ping, and Matos' position that Plaintiff self-admitted to the document.

(6) Defendants Higginson, Thielman, and O'Connor also deemed the SSU officer who initiated Plaintiff's Validation Packet (Defendant Brass), the SSU officer who purportedly discovered the evidence used to validate Plaintiff (Defendant Brass), the SSU officer who determined the documents were evidence of STG activity (Defendant Brass), and the prison officials who contradicted the validity of the evidence were irrelevant to Plaintiff's STG hearing and not interviewed or not even acknowledge by Defendants.

28) These are some, not all, of the concerning matters that lacked a modicum of impartiality or of documents that had a sufficient indicia of reliability. These concerning matters did not provide Plaintiff with "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. at 333.

29) Under these concerning matters Plaintiff was validated with an

3-F

insufficient amount of points based upon documents that lacked sufficient indicia of reliability.

30) Defendants Shinn, Ryan, Higginson, Thielman, O'Connor, O'Brien, Ping, Matos, and Brass did not find Plaintiff had committed any harmful or dangerous acts, nor did they find Plaintiff had violated any laws or regulations.

31) The STG hearing and review procedures utilized failed to provide minimum safeguards, including adequate notice, an impartial tribunal, a written decision based on objective determinations, and a meaningful appeal.

32) As a result of his Validation, Plaintiff has been confined at Browning Unit for over 6 years, over 73 months. Plaintiff is exposed to extremely onerous and isolating conditions which in the aggregate have negatively affected his mental health.

33) For instance:
   (1) Plaintiff is confined to a window-less cell measuring 10 x 8 feet with a sink, toilet, iron desk, and metal grate 2½ feet off the ground for the mattress.
   (2) Plaintiff must remain in his cell for 24 hours a day except 3 times a week for recreation and showers, if officers don't cancel for staff shortage or other reasons.
   (3) Recreation is restricted to 2 areas (a) chute recreational area which is 12 x 20 feet of empty room with a drain and 25 feet high concrete walls with layers of mesh grate ceiling (b) or in a 10x10 feet metal grate cage which

3-G

is offered once a week. No other inmates are permitted in the 2 recreational areas with Plaintiff.

(4) Plaintiff is served all his meals in his cell.

(5) Plaintiff must be stripped searched, handcuffed behind his back, and escorted by 2 officers everytime he leaves his cell.

34) These restrictions are designed to minimize and altogether eliminate human contact and impact every aspect of Plaintiff's current day to day existence. They are currently negatively impacting his ability to function while inside prison and will continue to negatively impact his ability to function upon his release.

35) The sanctions Plaintiff has endured since 2014 at Browning Unit and those that he will continue to endure have resulted in serious harms and loss of rights and opportunities.

36) As a consequence of the Arizona Department of Corrections (ADC) pre-determined "reviews" and of Plaintiff's pre-determined STG validation and resulting classifications, these harms will continue for a lengthy and indefinite period of time.

37) As a direct or proximate result of the above acts, Plaintiff has suffered violations of his established federal constitutional rights, loss of significant liberties, atypical deprivations and punishments, and stigmatizing record entries. Plaintiff has exhausted all avenues of administrative remedies. Plaintiff will continue to suffer serious harms and constitutional deprivations absent intervention by this Court.

3-H

## COUNT 1    Retaliation

38) Plaintiff incorporates paragraphs 1-37 by reference as though fully set forth herein.

39) Plaintiff has a protected First Amendment right to grieve prison conditions and to file lawsuits challenging ADC's policies, procedures, and conditions and to petition the Government for a redress of grievances.

40) With the approval or involvement of Defendants Ryan and Brass and their decision to transfer Plaintiff to Browning Unit without the requisite documented assignment of the minimum points, their subsequent initiation of STG proceedings against Plaintiff and with the approval or involvement of Defendants Shinn, Higginson, Thielman, O'Connor, O'Brien, Ping, Matos, and Brass and their March 2020 and September 2020 decisions to validate Plaintiff on documents lacking the requisite sufficient reliability, their blatant and flagrant bias against Plaintiff, the Arizona State Attorney Generals Office recognizing their moral turpitude by offering the September 2020 hearing to Plaintiff, Defendants blatant disregard to discovery materials that completly contradicts SSU officers, and the validity of the alleged evidence, and a number of other things, clearly demonstrates a pattern of improper actions that were substantially motivated in retaliation for Plaintiff's exercise of his protected First Amendment rights and did not reasonably advance legitimate correctional goals.

41) Defendants Shinn and Ryan is or was the Director of ADC. Defendant Ryan resigned in the beginning of 2020. In their capacity Defendants have or had administration control of, and

responsibility for ADC. To include establishing, administering, and applying statewide operations and policies in all State prisons. Upon information and belief Defendants was or were the final policymaker who gave their approval to implement policies, to include STG Validation Hearings.

42) As Deputy Wardens (Defendants Higginson, Thielman, O'Brien, and Ping) and the educational requirement for those positions, and the training received for STG committee members, it is highly improbable incompetance was involved.

43) As Majors of ADC (Defendants O'Connor and Matos) and the educational requirement for those positions, and the training received for STG committee members, it is highly improbable incompetance was involved.

44) As an SSU officer (Defendant Brass) and the requisite training and clearly set procedures set forth to initiate and execute an inmate's Validation Packet, under D.O. 806, it is highly improbable incompetance was involved.

45) Defendants' retaliatory acts chilled Plaintiff's First Amendant rights. No other remedies are available to address findings that originated as having the existence of retaliatory intent and motive; Johnson, 9th Cir. Case No: 17-17524, 12-19-2018, ID 11125905, DktEntry: 25-1, pg. 2 of 3 " a reasonable jury could find that... defendants acted with retaliatory motive" and "with retaliatory intent". Which still persist today.

3-J

## COUNT II

1. State the constitutional or other federal civil right that was violated: **First Amendment**

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: **Freedom to express and exercise speech.**

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   46) Plaintiff incorporates paragraphs 1-45 by reference as though fully set forth herein.

   47) Plaintiff has a protected First Amendment right to speak and express his Native American language without being stigmatized and designated, by the Government, as a security threat-gang member simply for expressing his words and himself in his Native ways.

   48) Despite the Arizona State Constitution article 28 §1(2)(9) designating English as the State's official language to be used, exempting the "using" or preserving [of] Native American languages" and 42 USCS §1996 which the United States of America acknowledges "American Indians their inherent right of freedom to believe, express, and exercise" their "traditional" beliefs-religion, to include speaking and expressing their Native language without fear of reprisal from the Government, Defendants Shinn, Ryan, Higginson, Thielman, O'Connor, O'Brien, Ping, Matos, and Brass believed otherwise.

   49) With the approval or involvement of Defendants' affirmative decision to label-

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   The injuries Plaintiff has endured and will continue to endure is stated in paragraphs 32 through 37.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count II? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count II to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.

4

and/or affirm a piece of evidence as STG activity simply for words and expressions used by Plaintiff in his Native language and belief, Defendants chose to interpret Plaintiff's words and expressions in a highly prejudicial manner.

50) To the best of Plaintiff's understanding, Defendants do not speak Plaintiff's Native language, does not understand Plaintiff's Native language, can barely - if at all - read Plaintiff's Native language, and are not from or enrolled in Plaintiff's federally recognized tribal community.

51) Defendants arbitrary and prejudicial acts violated Plaintiff's rights under the Arizona State Constitution, 42 USCS § 1996, and the First Amendment to the United States Constitution. Defendants arbitrary and prejudicial acts also ignored Congress' findings that "the traditional languages of Native Americans are an integral part of their cultures and identities" and "the status of the cultures and languages of Native Americans is unique and the United States has the responsibility to act together with Native Americans to ensure the survival of these unique cultures and languages" which affords "Native Americans in the United States, a status that recognizes distinct cultural... rights, including the right to continue separate identities", but Defendants did not ignore " a widespread practice of treating Native Americans [American] (sic) languages as if they were anachronisms" (sic) "which has often resulted in acts of suppression and extermination of Native American languages and cultures", 25 U.S.C. Chapter 31. NATIVE AMERICAN LANGUAGES § 2901 (1)(2)(3)(4) and (5).

4-a

## COUNT III

1. State the constitutional or other federal civil right that was violated: Fourteenth Amendment

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: Due process protections

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   52) Plaintiff incorporates paragraphs 1-51 by reference as though fully set forth herein.

   53) Plaintiff's indefinite and solitary confinement at Browning Unit, and the corresponding probable increase in his prison term are significant and atypical hardships.

   54) The conditions of Plaintiff's confinement and the duration of the deprivations he has endured since June 2014, with no end in sight, are extreme and sufficient in time and extent to trigger a protected liberty interest and all accompanying Due Process protections afforded under the Fourteenth Amendment to the United States Constitution.

   55) These hardships could not be imposed by Defendants Shinn, Ryan, Higginson, Thiedman, O'Connor, O'Brien, Ping, Matos, and Brass absent a sufficient evidentiary basis.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   The injuries Plaintiff has endured and will continue to endure is stated in paragraphs 32 through 37.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count III?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?  ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.

56) The "evidentiary basis" Defendants relied upon to validate Plaintiff was insufficient.

57) The validation process failed to adhere to ADC requirements, did not utilize sufficient or reliable evidence of present membership in a STG, and did not provide Plaintiff a meaningful review of the committee's decisions.

58) The March 2020 hearing and review was so egregious of implicit and explicit bias that a minimum of due process safeguards were absent that caused the Arizona State Attorney Generals Office to offer Plaintiff another hearing and review.

59) The September 2020 hearing and review also failed to provide minimal procedural safeguards including an opportunity for Plaintiff to present witnesses, an impartial tribunal (i.e. one of the presiding committee members is named in another complaint by a prisoner filed by Plaintiff relating to constitutional violations by prison officials; cv18-03055-PHX-MTL, 9th Cir. Case No: 20-15293, Johnson v. Ryan, et al.), and a meaningful written decision and appeal process.

60) Defendants' actions violated Plaintiff's due process rights, ADC policies and procedures, and the Fourteenth Amendment to the United States Constitution.

### E. REQUEST FOR RELIEF

State the relief you are seeking:

A. Order Defendants to take the specific steps necessary to restore Plaintiff to his condition and status in all respects prior to the above illegal acts and additional steps necessary to prevent these acts from reoccurring.

B. To the extent applicable, award Plaintiff any and all fees, attorney like fees, and costs incurred in this action.

C. Award any and all other and further relief as this Court deems appropriate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____                    _____
                    DATE                                SIGNATURE OF PLAINTIFF


_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)


_____
(Signature of attorney, if any)


_____
(Attorney's address & telephone number)

### ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

6