MDR

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Johnson,<br><br>              Plaintiff,<br><br>v.<br><br>David Shinn, et al.,<br><br>              Defendants. | No. CV 21-00559-PHX-MTL (ESW)<br><br>**ORDER** |

On March 31, 2021, Plaintiff Richard Johnson, who is confined in the Arizona State Prison Complex (ASPC)-Eyman in Florence, Arizona, filed a pro se civil rights Complaint and an Application to Proceed In Forma Pauperis. In a May 18, 2021 Order, the Court granted the Application to Proceed and dismissed the Complaint because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On May 28, 2021, Plaintiff paid the balance of the filing fee. On June 9, 2021, Plaintiff filed a First Amended Complaint (Doc. 9). The Court will order Defendants Higginson, Thielman, and O'Connor to answer Counts Two and Three of the First Amended Complaint and will dismiss Count One and Defendant Brass without prejudice.

**I.**     **Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff

TERMPSREF

has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**II.     First Amended Complaint**

In his three-count First Amended Complaint, Plaintiff seeks injunctive relief, his fees and costs, and "attorney[-]like" fees" from Defendants Deputy Wardens Thomas Higginson and Shannon Thielman, Major Patrick O'Connor, and Special Security Unit (SSU) Officer Levi Brass.

TERMPSREF

- 2 -

Plaintiff alleges that prior to May 1, 2014, he was confined in a maximum-security solitary confinement unit and, at the same time, the Arizona Department of Corrections (ADC) was trying to settle a class action lawsuit that involved, among other things, "inhumane living conditions in maximum security units." He claims he submitted several grievances regarding "the unsanitary and inhumane cell conditions" and officers sexually harassing him. On May 1, 2014, he was transferred to a less restrictive unit, where he continued to pursue his previously filed grievances, despite a corrections officer telling him to "let [his] grievances go."

Plaintiff claims that on June 5, 2014, he was involuntarily transferred to ASPC-Florence's Kasson Unit, which is a more restrictive, maximum-security unit. He contends that when he asked why he had been transferred to the Kasson Unit, he was told by the Interim Division Director of Offender Operations that he had been transferred "'pending validation'" as a Security Threat Group (STG) member. Plaintiff asserts this was "mere pretext" because, at that point, SSU officers had not initiated his STG validation packet and had not "collected the necessary STG-specific evidence to consider Plaintiff as an STG suspect."

After an October 2014 hearing, Plaintiff was validated as an STG member. Plaintiff claims he filed a civil rights lawsuit against several prison officials, *Johnson v. McWilliams*, CV 15-00670-PHX-MTL (D. Ariz.). According to Plaintiff, on January 23, 2020, the parties agreed to a "Settlement Agreement and Release of Claims" providing, among other things, that Plaintiff would receive a new validation hearing, "at which Plaintiff would be permitted to use discovery materials on his behalf." The parties also agreed that the new validation hearing would use the same STG validation packet used at Plaintiff's original validation hearing. Plaintiff received his new validation hearing in September 2020.

In **Count One**, Plaintiff alleges Defendants subjected him to retaliation, in violation of his First Amendment rights. Plaintiff asserts that the STG process was "used as a means of retaliating against [him] because he exercised his First Amendment rights" and, as a

result of Defendants Brass, Higginson, Thielman, and O'Connor's actions, he has been confined in a maximum custody solitary confinement unit for the last seven years and has been exposed to "extremely onerous and isolating conditions which in the aggregate have negatively affected his mental health."

Plaintiff contends Defendant Brass, who was the SSU officer who initiated Plaintiff's validation packet "before he was even a suspect and after Plaintiff submitted several grievances,"

    (1)    "purportedly found paperwork in Plaintiff's property that he deemed [to be] STG documents," although Plaintiff denies knowing about or possessing these documents and prison officials have admitted that their records show "no evidence of any paperwork being 'seized'";

    (2)    "used a list of names that he portrayed as [being in] Plaintiff's handwriting as evidence of gang activity," although Plaintiff denies knowing about or possessing the list and, during discovery, "it was established the list was not in Plaintiff's handwriting and did not have his name or ADC number in it";

    (3)    transferred Plaintiff to the Kasson Unit "before the requisite documented assignment of the minimum points," although Defendant Brass stated at the validation hearing that "Plaintiff had over half of the required points for validation" before he was transferred to the Kasson Unit on June 5, 2014.

Plaintiff contends that Defendant Brass's conduct was retaliatory and that a reasonable person could conclude Defendant Brass's actions were "highly questionable" regarding "the timing of the evidence gathering," the validity of the evidence, and the "nonexistence of documented gang activity prior to Plaintiff's 'pending validation' transfer."

Plaintiff contends Defendants Higginson, Thielman, and O'Connor:[1]

    (1)    deemed Defendant Brass's statements "credible" despite Plaintiff providing documentary evidence that the statements were untrue;

---

[1] Plaintiff identifies these Defendants as "Committee Members." Presumably, they are the members of the committee that conducted the September 2020 validation hearing.

- 4 -

(2) "deemed documents met STG criteria in accordance [with Defendant] Brass" and found Defendant Brass's assessment "credible," despite Plaintiff stating "verbatim[] what the criteria[] and definitions were and how disproportionately documents didn't fit into their categories";

(3) "maintained a finding of valid STG material" from a document that was "deemed a[] 'self-admission,'" but was actually a PowerPoint presentation Plaintiff had previously prepared and presented to a prior validation committee that paraphrased and refuted the charges against him; and

(4) concluded Defendant Brass and "other prison officials who could contradict or seriously question the validity of the evidence" were "irrelevant to Plaintiff's STG hearing" and did not interview, "or even acknowledge[]," the officials.

He claims Defendants Higginson, Thielman, and O'Connor's actions "are a continuation of retaliatory intent that brought forth the Settlement, the conditions of the Settlement, and the September 2020 STG hearing[, n]one of [which] would have happene[]d absent a finding of 'retaliatory motive' and 'retaliatory intent' by prison officials in the first place."[2]

In **Count Two**, Plaintiff alleges Defendants Higginson, Thielman, and O'Connor violated his First Amendment rights of "freedom to express and exercise-speech" because they "sustained a previous finding of Plaintiff's Native American language as STG activity." Specifically, Plaintiff alleges he used the word "dog" in his Native American language "as a derivative to friend, partner, companion [or] homie," to describe the relationship between two inmates. He claims that a prior "STG hearing committee said <u>dog</u> used in a Native American language meant an inmate wanting to become a prison gang member." Plaintiff asserts Defendants Higginson, Thielman, and O'Connor "maintained the previous finding[] as 'credible'" and their decision was "complet[e]ly in opposition to the First Amendment" and ignored Congress's finding that "the traditional languages of

---

[2] Plaintiff cites to a December 19, 2018 Ninth Circuit Court of Appeals Memorandum in CV 15-00670 that concluded that a reasonably jury could find statements allegedly made by three prison officials, who were defendants in that action and validated Plaintiff as a gang member, "showed that defendants acted with retaliatory motive." *See* Doc. 159-1 in CV 15-00670.

Native Americans are an integral part of their cultures and identities." Plaintiff contends Defendants are not enrolled in his tribal community and do not speak or understand his Native language.

In **Count Three**, Plaintiff claims Defendants Higginson, Thielman, and O'Connor violated his Fourteenth Amendment right to due process. Plaintiff alleges the "conditions of his confinement and the duration of the deprivations he has endured since June 2014, with no end in sight, are extreme and sufficient in time and extent to trigger a protected liberty interest and all accompanying due process protections."

Plaintiff contends he is confined in a windowless, 10' by 8' cell with a sink, toilet, desk, and "a metal grate 2 1/2 feet off the ground for the mattress." He claims he is not eligible for temporary release or the restoration of earned release credits; is served his meals in his cell; must be strip searched, handcuffed with his hands behind his back, and escorted by two officers whenever he leaves his cell; and must remain in his cell for 24 hours per day, except for the three times a week he is allowed out for recreation and showers. He alleges inmates recreate alone in either a 10' by 10' metal grate cage or an empty, 12' by 20' "chute recreation area" that has a drain, 25-foot-high concrete walls, and a mesh-grate ceiling. Plaintiff alleges these restrictions are designed to minimize and eliminate human contact and impact every aspect of his day-to-day existence. He claims they are negatively impacting his ability to function in prison and will negatively impact his ability to function when he is released. Plaintiff alleges that these harms "will continue for a lengthy and indefinite period of time" due to "ADC's pre-determined reviews" and Plaintiff's "pre-determined STG validation and resulting classifications."

Plaintiff claims Defendants Higginson, Thielman, and O'Connor did not find he had committed any harmful or dangerous acts or had violated any rules or regulations. He contends they found his validation packet "credible" despite Plaintiff providing a PowerPoint presentation and discovery material that "seriously questions the evidence as reliable STG material." He alleges Defendants Higginson, Thielman, and O'Connor:

(1) did not consider "the points raised or . . . exculpatory documentation[] that significantly contradicted the alleged evidence in Plaintiff's validation packet";

(2) "discounted" Defendant Brass's prior statements that "a number of STG documents were well documented" before Plaintiff was transferred to the Kasson Unit pending validation and that Plaintiff had "acquired over half of his 16 STG points" before he was transferred, despite Plaintiff providing Defendant Brass's "previously made statements and Plaintiff's validation packet showing otherwise";

(3) discounted the Division Director of Offender Operations discovery responses that there was no evidence of any paperwork being seized from Plaintiff's property, although Defendant Brass had claimed STG documents were discovered in Plaintiff's property; and

(4) discounted "what the criteria and definitions are for materials to be considered as STG materials," even after Plaintiff "stated verbatim[] what they were and how the alleged evidence didn't fit those definitions or meet those criteria[]."

Plaintiff alleges "[t]his arbitrary process" prevented him from receiving an "impartial hearing," he was validated based on documents that "lacked a sufficient indic[i]a of reliability," and he was denied "the opportunity to be heard at a meaningful time and in a meaningful manner." He also asserts that the "arbitrary decision" leaves him with "no basis to object and appeal his validation in a meaningful way."

### III. Discussion

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

### A.   Count One

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of

(3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claim requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

### 1.     **Defendant Brass**

Failure to state a claim includes circumstances where a defense is "complete and obvious from the face of the pleadings." *Franklin v. Murphy*, 745 F.2d 1221, 1228 (9th Cir. 1984), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). In the absence of waiver, the Court may raise the defense of statute of limitations sua sponte. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993); *see also Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003) (upholding sua sponte dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) of prisoner's time-barred complaint).

The applicable statute of limitations in an action under 42 U.S.C. § 1983 is the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). The Arizona statute of limitations for personal injury actions is two years. *See* Ariz. Rev. Stat. § 12-542(1).

Accrual of § 1983 claims is governed by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a claim accrues when the plaintiff "knows or has reason to know of the injury that is the basis of the action." *Pouncil v. Tilton*, 704 F.3d 568, 574 (9th Cir. 2012); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 381 (9th Cir. 1998). Thus, to be timely, Plaintiff's claims must have accrued no more than two years

before his Complaint was filed on March 31, 2021. Based on Plaintiff's allegations, Defendant Brass's actions took place in 2014. Thus, the Court will dismiss as untimely Plaintiff's claim against Defendant Brass.

### 2. Defendants Higginson, Thielman, and O'Connor

Plaintiff contends Defendants Higginson, Thielman, and O'Connor's actions "are a continuation of retaliatory intent that brought forth the Settlement, the conditions of the Settlement, and the September 2020 STG hearing," and that these would not have occurred "absent a finding of 'retaliatory motive' and 'retaliatory intent' by prison officials in the first place." But this focusses on the retaliatory intent of *others*, not Defendants Higginson, Thielman, and O'Connor. Indeed, Plaintiff alleges nothing to suggest that Defendants Higginson, Thielman, and O'Connor were aware he had filed grievances in 2014 or that they validated him as a STG member because he filed those grievances.[3] Plaintiff's allegations are simply too vague and conclusory to suggest that the grievances he filed in 2014 were a substantial or motivating factor behind Defendants Higginson, Thielman, and O'Connor's decision to validate him in September 2020. Thus, the Court will dismiss without prejudice Plaintiff's retaliation claim against Defendants Higginson, Thielman, and O'Connor.

### B. Count Two

Plaintiff's allegations in Count Two do not plausibly state a First Amendment claim. However, liberally construed, Plaintiff has stated a Fourteenth Amendment due process claim against Defendants Higginson, Thielman, and O'Connor. *See Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir. 2003) (prison officials must provide an inmate facing gang

---

[3] In the December 19, 2018 Memorandum, the Ninth Circuit Court of Appeals concluded that "a reasonable jury could find that the alleged statements [at the original validation hearing] showed that defendants [in CV 15-00670] acted with retaliatory motive." The Ninth Circuit referred to Plaintiff's allegations that (1) when he stated at the hearing that he was being validated in retaliation for filing grievances, the defendants stated, "you shouldn't have done that in the first place" and "if you hadn't grieved any officers you wouldn't be here"; and (2) when he attempted to challenge the evidence against him, the defendants said, "the decision to validate you has come from Central Office" before the hearing had concluded. Plaintiff makes no similar allegations against Defendants Higginson, Thielman, and O'Connor regarding the September 2020 validation hearing.

validation with notice of the charges and an opportunity to present his views, and the decision must be supported by "some evidence" that has "sufficient indicia of reliability"). Thus, the Court will order Defendants Higginson, Thielman, and O'Connor to answer Court Two as a due process claim.

### C.     Count Three

Liberally construed, Plaintiff has stated a due process claim in Count Three. The Court will require Defendants Higginson, Thielman, and O'Connor to answer Count Three.

## IV.    Warnings

### A.     Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### B.     Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by including, with every document he files, a certificate of service stating that this case is subject to General Order 14-17 and indicating the date the document was delivered to prison officials for filing with the Court.

**If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### C. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Count One is **dismissed** without prejudice.

(2) Defendant Brass is **dismissed** without prejudice.

(3) Defendants Higginson, Thielman, and O'Connor must answer Counts Two (as a due process claim, not a free speech claim) and must answer Count Three.

(4) The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Higginson, Thielman, and O'Connor.

(5) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(8) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(9)     A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(10)     The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

    (a)     personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b)     within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11)     Defendants Higginson, Thielman, and O'Connor must answer relevant portions of the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

. . . .

. . . .

(12)　Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13)　This matter is referred to Magistrate Judge Eileen S. Willett pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 4th day of October, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge

TERMPSREF